## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| MARK ANI *and others similarly situated* | ) ) | CIVIL ACTION FILE NO. |
| | ) | |
| Plaintiffs, | ) | _____ |
| | ) | |
| v. | ) | **JURY TRIAL REQUESTED** |
| | ) | |
| STYLE TAXI & TRAVEL, INC.; | ) | |
| STYLE TAXI, INC.; | ) | |
| STYLE TRANSPORTATION, INC.; | ) | |
| LACEY PAUL GROSE, SR.; | ) | |
| L. PAUL GROSE, JR.; AND | ) | |
| EDITH S. GROSE, | ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT FOR DAMAGES**

Named Plaintiff Mark Ani, on his own behalf and on behalf of others similarly situated, by and through undersigned counsel, hereby brings this action against Defendants Style Taxi & Travel, Inc.; Style Taxi, Inc.; and Style Transportation, Inc. (collectively, "Style Taxi") and Defendants Lacey Paul Grose, Sr.; L. Paul Grose, Jr.; and Edith S. Grose (collectively, "Individual Defendants").

1

## NATURE OF THE ACTION

1. This is an action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and under Georgia law alleging that Style Taxi and Individual Defendants: (1) violated the FLSA by failing to pay Named Plaintiff and others similarly situated the minimum wage; (2) failed to pay Named Plaintiff and others similarly situated the correct amount of overtime wages; (3) retaliated against Named Plaintiff for exercising rights protected under the FLSA; and (4) unlawfully converted funds belonging to Named Plaintiff and others similarly situated.

## PARTIES

2. Named Plaintiff is a 53-year-old Nigerian national, who moved to the United States in 1980. He has a Green Card for permanent residence in the United States.

3. The class of "others similarly situated" includes all current and former drivers who have worked for Style Taxi at any time during the last three years.

4. Style Taxi & Travel, Inc.; Style Taxi, Inc.; and Style Transportation, Inc. are Georgia Corporations. They are subject to personal jurisdiction in the State of Georgia for purposes of this lawsuit because they are citizens of the State of Georgia. All three corporations have their principal office at 6870 Roswell Rd. NE / Suite 1-A / Atlanta, GA 30328. All three corporations may be served with

process by delivering a copy of the complaint and a summons to one of their corporate officers. Fed.R.Civ.P. 4(h). Lacey Grose is the Chief Executive Officer of all three corporations; Edith Grose is Chief Financial Officer for all three corporations, and Paul Grose is Secretary for all three corporations. Therefore, service upon any of the three Individual Defendants is valid service upon any of the corporate defendants.

5. Defendant Lacey Grose, Sr. is the Chief Executive Officer of Style Taxi. He may be served with process personally at his home address, at the office of Style Taxi, or wherever he may be found. Alternatively, Defendant Lacey Grose may be served with process by leaving a copy of the summons and complaint with someone of "suitable age and discretion" residing at his home address. Fed.R.Civ.P. 4.

6. Edith Grose is the Chief Financial Officer of Style Taxi. She may be served with process personally at her home address, at the office of Style Taxi, or wherever she may be found. Alternatively, Defendant Edith Grose may be served with process by leaving a copy of the summons and complaint with someone of "suitable age and discretion" residing at her home address. Fed.R.Civ.P. 4.

7. Paul Grose, Jr. is the Secretary of Style Taxi. He may be served with process personally at his home address, at the office of Style Taxi, or wherever he

may be found.  Alternatively, Defendant Paul Grose may be served with process by leaving a copy of the summons and complaint with someone of "suitable age and discretion" residing at his home address.  Fed.R.Civ.P. 4.

## JURISDICTION AND VENUE

8. The Court has jurisdiction over the federal claims stated herein pursuant to 28 U.S.C. § 1331 (federal question).  The Court has jurisdiction over the state law claim stated herein pursuant to 28 U.S.C. § 1367(a) (supplemental jurisdiction) because the state law claim "arise[s] out of a common nucleus of operative fact with [the] substantial federal claim[s.]" *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006).

9. Defendants are employers covered by the FLSA because (1) Style Taxi an employer engaged in interstate commerce, (2) Style Taxi's employees (including Plaintiffs) are engaged in interstate commerce, and (3) Style Taxi has at least $500,000 in "annual gross volume of sales made or business done."  29 U.S.C. § 203(s)(1)(A).

10. Defendant Lacey Grose is an employer under the FLSA because, as Chief Executive Officer of Style Taxi, he is a corporate officer with operational control of Style Taxi's covered enterprise.  Moreover, Defendant Lacey Grose retaliated against Named Plaintiff by terminating him on Friday, January 20, 2012.

As such, Defendant Lacey Grose is jointly and severally liable to Named Plaintiff and others similarly situated for unpaid wages and other damages. *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008).

11.  Defendant Edith Grose is an employer under the FLSA because, as Chief Financial Officer of Style Taxi, she is a corporate officer with operational control of Style Taxi's covered enterprise and is highly involved in the company's day-to-day operations. As such, Defendant Edith Grose is jointly and severally liable to Named Plaintiff and others similarly situated for unpaid wages and other damages. *Alvarez Perez*, 515 F.3d at 1160.

12.  Defendant Paul Grose is an employer under the FLSA because, as Secretary of Style Taxi, he is a corporate officer with operational control of Style Taxi's covered enterprise and is highly involved in the company's day-to-day operations. Moreover, Defendant Paul Grose retaliated against Named Plaintiff by confiscating his vehicle and keys on Friday, January 20, 2012. As such, Defendant Paul Grose is jointly and severally liable to Named Plaintiff and others similarly situated for unpaid wages and other damages. *Alvarez Perez*, 515 F.3d at 1160.

13.  Pursuant to 28 U.S.C. § 1391 and Local Rule 3.1(B)(1)(a), venue is proper in this Court because the events giving rise to the claims of Named Plaintiff

and others similarly situated occurred within the Atlanta Division of the United States District Court for the Northern District of Georgia.

## FACTS SHOWING THAT PLAINTIFFS ARE EMPLOYEES OF STYLE TAXI, RATHER THAN INDEPENDENT CONTRACTORS

14. Named Plaintiff and others similarly situated are/were drivers for Style Taxi during the last three years.

15. Named Plaintiff started work as a driver for Style Taxi in January of 2008, and he continued working in that capacity until January 20, 2012.

16. Style Taxi requires its drivers, including Named Plaintiff and others similarly situated, to sign agreements purporting to label them as "independent contractors" rather than employees. In spite of this agreement, Plaintiffs are employees under the FLSA, and any agreements to the contrary are irrelevant to a proper determination of their true status. A true and correct copy of Named Plaintiff's independent contractor agreement executed January 1, 2008, is attached hereto as Exhibit A, and a true and correct copy of Named Plaintiff's independent contractor agreement executed August 21, 2009, is attached hereto as Exhibit B.

17. Style Taxi maintains a high degree of control over the work performed by Named Plaintiff and others similarly situated. For example, the independent contractor agreements require drivers (1) to submit Motor Vehicle

Reports to VFH Captive Insurance Company; (2) to abide by the regulations adopted by Style Taxi from the DeKalb County Vehicle for Hire Department, which are the most restrictive in the area; (3) to route all calls from customers to the main dispatch office rather than receive calls from customers on personal cell phones; (4) to refrain from talking on cell phones while driving with passengers; and (5) to refrain from giving out unauthorized business cards.

18.   Style Taxi's independent contractor agreements notify drivers that they will be subject to random drug testing.  (Exhibit A; Exhibit B).  (Style Taxi did not, however, subject Named Plaintiff to any random drug tests.)

19.   Style Taxi permits its drivers to use their own vehicles, but nevertheless requires them to pay a graduated "lease" fee depending on the kind of vehicle being driven ($250 per week for a regular taxi, $285 per week for a van, or $315 per week for a town car).  Moreover, the vehicle must be painted black and kept cleaned and well-maintained.

20.   Alternatively, drivers for Style Taxi may lease a vehicle.  The lease fees are $450 per week for a regular taxi, $500 per week for a van, or $550 per week for a town car.  However, the lease does not create any equity interests or genuine property rights in the leased vehicle because Defendants' may change the terms of the "lease" unilaterally upon one week's notice and may require that the

vehicle be returned immediately in certain circumstances. Moreover, the drivers have no ability to lease the vehicles under a "lease-to-own" plan.

21. Named Plaintiff leased a regular taxi from Style Taxi from his start date in January of 2008 until March or April of 2010, when he upgraded his leased vehicle to an unmarked SUV.

22. Style Taxi has a *de facto* policy of penalizing drivers who do not accept dispatches given to them. For example, Named Plaintiff's first independent contractor agreement states that "[i]f he . . . refuses a call, he . . . will not be given another can until he . . . comes in and explains why." (Exhibit A at 1 of 4; Exhibit B).

23. On numerous occasions when Named Plaintiff did not accept a dispatch, he would be temporarily suspended from receiving further dispatches. On multiple occasions, Paul Grose called Named Plaintiff on his personal cell phone and demanded that he pick up a passenger. On occasions when Named Plaintiff refused to pick up such passengers, he would be temporarily suspended from receiving dispatches.

24. Upon information and belief, Style Taxi operates a fleet of more than eighty (80) taxis, vans, SUVs and executive "black cars."

25. Upon information and belief, approximately ninety (90) to ninety-five (95) percent of the drivers for Style Taxi lease their work vehicles rather than own them. Such drivers have no investment relative to Style Taxi.

26. In addition, Style Taxi retains "the right to change the lease fee rate at any time and with one week prior notification." (Exhibit A at 4 of 4; Exhibit B). Therefore, it is questionable whether drivers even have a leasehold interest in the vehicles provided to them by Style Taxi.

27. Drivers who use their own vehicles for work have some investment relative to Style Taxi, but this investment is dwarfed by Style's investment in vehicles, computer systems, GPS technology, and other assets.

28. Style Taxi prohibits its drivers from designing and handing out personalized business cards. Moreover, Style Taxi threatens in its independent contractor agreements to terminate drivers who pass out unauthorized business cards. (Exhibit B at 2 of 5).

29. Style Taxi provides drivers with business cards, but these cards do not include the drivers' names. Accordingly, Style Taxi severely limits the ability of its drivers to develop their own client bases.

30. Style Taxi's independent contractor agreement prohibits drivers from receiving calls from customers on their personal cell phones.

31. Style Taxi prohibits drivers from using "the assets of Style Taxi, Inc. and Style Transportation, Inc.'s customer base to further [their] personal or any other company's agenda." Style Taxi threatens immediate legal action for any violation of this rule. (Exhibit A at 3 of 4; Exhibit B).

32. Style Taxi controls the amount of fares that the drivers receive.

33. Driving a taxi is not an occupation that requires a high level of skill or initiative.

34. Named Plaintiff was a driver for Style Taxi from January of 2008 until January of 2011.

35. Others similarly situated also had lasting relationships with Style Taxi and did not do seasonal, temporary, or project-based work for the company.

36. Style Taxi is in the business of providing transportation by means of taxis, SUVs, and other vehicles. Therefore, Named Plaintiff and similarly situated drivers' jobs are wholly integral to Style Taxi's business.

37. Consequently, and in spite of whatever labels Style Taxi applies to them, Named Plaintiff and others similarly situated are employees under the FLSA and not independent contractors.

## COUNT ONE: FAILURE TO PAY MINIMUM WAGES

38. Named Plaintiff and others similarly situated performed many thousands of hours of work for Defendants over the past three years, and they received no compensation for this work from Defendants.

39. Style Taxi is a covered enterprise under the FLSA, and Named Plaintiff and others similarly situated are employees rather than independent contractors under the Act.

40. Named Plaintiff and others similarly situated are not exempt from the FLSA's minimum wage provisions, and accordingly, Defendants were required to pay them the minimum wage pursuant to 29 U.S.C. § 206(a).

41. Defendants also violated the FLSA by failing to maintain accurate time records for Named Plaintiff and others similarly situated.

42. Defendants' attempt to evade paying the minimum by means of labeling Named Plaintiff and others similarly situated as "independent contractors" was without legal basis and was a willful violation of the FLSA.

43. Pursuant to 29 U.S.C. § 216(b), Defendants are jointly and severally liable to Named Plaintiff and others similarly situated for three years of unpaid minimum wages, an equal amount as liquidated damages, and reasonable attorney's fees.

## **COUNT TWO: FAILURE TO PAY OVERTIME**

44. Named Plaintiff and others similarly situated regularly worked more than forty (40) hours per week for Defendants during the last three years.

45. Style Taxi is a covered enterprise under the FLSA, and Named Plaintiff and others similarly situated are employees rather than independent contractors under the Act.

46. Named Plaintiff and others similarly situated are not exempt from the FLSA's overtime requirement. Accordingly, Defendants were required to pay Named Plaintiff and others similarly situated overtime for all hours worked above forty (40) per week at rates of not less than one and one-half times their regular rates.

47. Style Taxi's drivers do not fall under the "Taxicab Exemption" of the FLSA because Style Taxi (1) operates with fixed routes to and from Hartsfield Jackson International Airport and (2) maintains "contracts for recurrent transportation." *See* 29 U.S.C. § 213(b)(17); Dep't of Labor, Wage and Hour Division, Field Operations Handbook § 24h01.

48. Defendants never paid Named Plaintiff and others similarly situated any overtime compensation.

49. Defendants also violated the FLSA by failing to maintain accurate time records for Named Plaintiffs and others similarly situated.

50. Defendants' violations of the FLSA's overtime requirement were willful.

51. Pursuant to 29 U.S.C. § 216(b), Defendants are jointly and severally liable to Named Plaintiff and others similarly situated for three years of unpaid overtime wages, an equal amount as liquidated damages, and reasonable attorney's fees.

## COUNT THREE: RETALIATION

52. Named Plaintiff engaged in protected activity under the FLSA when he communicated with other drivers about the possibility of pursuing a collective action under the FLSA in January of 2012.

53. Named Plaintiff also engaged in protected activity under the FLSA when, through counsel, he submitted two letters to Style Taxi: (1) a Notice of Representation & Claim Under the Fair Labor Standards Act and (2) a Notice to Preserve Evidence.  True and correct copies of those documents are attached hereto as Exhibits C and D, respectively.

54. Named Plaintiff suffered an adverse employment action when on Friday, January 20, 2012, Style Taxi sent a notification to his car's terminal falsely stating that he was suspended for failure to pay dues.

55. Named Plaintiff suffered another adverse employment action when on Friday, January 20, 2012, Style Taxi deactivated the terminal in his car, thereby preventing him from performing any work or picking up any passengers.

56. Named Plaintiff suffered an adverse employment action when on Friday, January 20, 2012, Lacey Grose ordered him to return his vehicle to the office of Style Taxi and instructed Named Plaintiff that his relationship with Style Taxi was terminated.

57. On information and belief, all Individual Defendants were involved in the decision-making process that resulted in the aforementioned adverse employment actions.

58. Style Taxi explicitly terminated Named Plaintiff on account of his submission of a Notice of Claim Letter and Notice to Preserve Evidence. Accordingly, there was a causal connection between Plaintiff's protected activities and Defendants' termination of Plaintiff.

59. Defendants are jointly and severally liable to Named Plaintiff for back pay, front pay, damages for emotional distress, liquidated damages, punitive damages, attorney's fees, and all other relief to which Named Plaintiff is entitled.

## COUNT FOUR: CIVIL THEFT

60. During the time that Defendants employed Named Plaintiff and others similarly situated, Defendants were obligated to pay Named Plaintiff and others similarly situated all funds that were rightfully theirs.

61. Upon information and belief, Defendants engaged in a systematic program of retaining portions of funds that they held in trust for the benefit of Named Plaintiff and others similarly situated.

62. Defendants' fraudulent retention of these funds and their efforts to conceal such retentions constituted civil theft under Georgia Law.

63. Defendants are jointly and severally liable to Named Plaintiff and others similarly situated for their actual damages, compensatory damages, attorney's fees, and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Named Plaintiff and others similarly situated seek judgment against Defendants, and ask for relief as follows:

a. That Named Plaintiff be reinstated to his position as driver for Style Taxi;

b. That Defendants be enjoined from further retaliation against Named Plaintiff and others similarly situated;

c. That Defendants be enjoined from further willful violations of the right of Named Plaintiff and others similarly situated to be paid in accordance with the FLSA's minimum wage and overtime requirements;

d. That Named Plaintiff and others similarly situated receive judgment against Defendants for unpaid wages dating back to three years from the date that this action is filed;

e. That Named Plaintiff and others similarly situated receive judgment for liquidated damages equal to the amount of their unpaid wages;

f. That Named Plaintiff and others similarly situated receive judgment against Defendants for costs and attorney's fees in a sum that shall be proven at trial;

g. That Named Plaintiff receive judgment for back pay, front pay, compensatory damages, emotional distress, punitive damages, attorney's

fees, and liquidated damages stemming from Defendants' unlawful acts of retaliation against Named Plaintiff;

h. That Named Plaintiff and others similarly situated receive judgment against Defendants for compensatory damages, actual damages, punitive damages, and attorney's fees for Defendants' civil theft of funds belonging to Named Plaintiff and others similarly situated; and

i. That Named Plaintiff and others similarly situated receive such other and further relief as the Court deems just and proper.

Respectfully submitted this 23rd day of January, 2012.

|  |  |
|---|---|
| **MAYS & KERR LLC** <br> 229 Peachtree Street NW <br> International Tower \| Suite 950 <br> Atlanta, GA 30303 <br> Telephone:  (404) 410-7998 <br> Facsimile:   (877) 813-1845 <br> Attorneys for Plaintiff | /s/ Jeff Kerr <br> Jeff Kerr <br> Ga. Bar No. 634260 <br> jeff@maysandkerr.com <br><br> John L. Mays <br> Ga. Bar No. 986574 <br> john@maysandkerr.com |